I'm sorry, did you call the case? Base number 12-2668, Junior Blackston v. Lloyd Rapelje, arguments not to exceed 15 minutes per side. Mr. Pustusha, or the appellant. May it please the court, Eric Pustusha from the Attorney General's office on behalf of the state. I'd like to reserve four minutes for rebuttal. I'd like to begin with the standard review. This is the federal review of a state court decision in habeas. The state court resolved the two issues on the merits. As a consequence, there's a high level of deference accorded to the state court decision. Here, the Michigan Supreme Court decision. Relief is only appropriate where there has been an extreme malfunction. There must be a decision on which there can be no fair-minded disagreement among jurists. I think we know the standard. Yes, thank you, Your Honor. The two issues are whether the Michigan Supreme Court was objectively unreasonable in affirming the exclusion of the recantation statement of two witnesses, and whether the Michigan Supreme Court was objectively unreasonable in affirming the conviction by determining that any error was harmless. On the first issue, the June 2013 decision, Nevada v. Jackson, is a game changer. It dovetails with the Maddox decision and makes clear that the district court's decision on the first issue was wrong. The setup for this is that there were two witnesses who had testified at the first trial, Carl Simpson and Darlene Rhodes, an accomplice and the girlfriend and mother of four of Mr. Blackson's children, who had given an adverse testimony against him at the first trial. You're going to have to humor me with this. If you could just speak a little more slowly. Oh, I apologize, Your Honor. That's all right. It's a very common thing, but my brain is not as fast as yours. No, no. I'm struggling a little. All right, so Mr. Simpson and Ms. Rhodes testified at the first trial. They were unavailable then for the second trial, made themselves unavailable, essentially. So she gets amnesia and he recants. Right. So he just won't say anything when he's up there? He refuses to testify, and she gives a little bit of testimony. But as a consequence of them both being unavailable, their former testimony is read in. The legal issue is whether they should be subject to impeachment with their written recantations that occurred after the first trial but before the second trial. Mr. Raticia, as to the gentleman that you described as refusing to testify, I know the judge was getting a little impatient, but I thought the circumstances showed that, in fact, he said he would, but he wanted to change clothes, take a shower, clean up before he was called to testify. The state trial court ultimately concluded this was essentially a ruse, that he was refusing to testify, and that was the ultimate conclusion of the state courts in the Michigan Supreme Court as well, concluding that he was unavailable under Michigan Rule of Evidence 804b-1. So that really is a fact determination which is entitled to deference unless there's clear and convincing evidence that demonstrates that it was improper, and I don't think that issue has been advanced in this appeal. So in other words, it's kind of the background fact that he is unavailable, and that has not been challenged. All right. Thank you. So then we start with this question of whether the Michigan Supreme Court was wrong in affirming the exclusion of the recantation statements. And the reason Jackson is so important is that the court states in Jackson that the Supreme Court has never held that the Confrontation Clause entitles a criminal defendant to introduce extrinsic evidence for impeachment purposes, and it's clear that the evidence at play here would have been extrinsic evidence. It had to have been introduced through a third-party witness, and that would not be in dispute. The trial counsel for Mr. Blackson in the post-conviction hearing said, I would say yes, it was my plan to bring in a statement without them testifying. The whole notion that this is impeachment, it sort of puzzles me, and maybe you would think it's not impeachment. I mean, as a practical matter, neither of these witnesses is offering substantive testimony, and so we're impeaching their testimony that's being read from a trial transcript. So is that impeachment in the usual sense of the word, or is this just a Crane v. Kentucky kind of case where I've got a piece of evidence that I just need to get in as a part of my defense? No, it wouldn't be substantive evidence, and it has not been framed as a right to presented defense. It's really been raised as a Confrontation Clause. I know it's been framed that way. But the former testimony was introduced for its substantive purposes, so it was taken for substantive purposes because the Confrontation Clause would be satisfied under Maddox based on the prior cross-examination. I mean, another claim which has not been advanced is that all of the testimony should have been excluded. That hasn't been advanced. So the question is whether that testimony had to be subject to this extrinsic evidence of impeachment, and that's why I think the Maddox case is so helpful in its analysis. It's the old case, 1895. It's the similar case for former testimony satisfying the Confrontation Clause. But there was also then a distinct evidentiary analysis about why kind of a similar case where you have a witness who testified the first trial, dies before the second trial, and there are allegations that he recanted his first trial testimony. And the United States Supreme Court evaluates it on an evidentiary matter and says, we're not going to allow this recantation evidence to come in. And now its analysis about fear of temptation to perjury and fabrication of testimony dovetails the Michigan Supreme Court's concerns here because these two witnesses closely aligned with Mr. Blackston, the Michigan Supreme Court described as a manipulation of the process. They issued epistles advocating for acquittal and then refused to testify, essentially trying to torpedo their first trial's testimony. So the question is, is there any guidance from the United States Supreme Court, the clearly established law which is the universe that we look to, about what happens when you have former testimony that you wish to impeach with extrinsic evidence? And there really is no guidance other than Maddox which excluded that evidence. Now there was one piece of cross-examination which related to Ms. Darlene Rose because she did provide a short amount of testimony, although her testimony was essentially I don't recall or I wish to invoke my Fifth Amendment privilege. But after a series of 14 questions where she says I don't recall, the last question related to her August 2002 affidavit where she recanted her first trial's testimony, and there was a question asked, answer taken, and then the trial court didn't allow for any further cross-examination. So that is a cross-examination context, a confrontation context. But for that analysis, the Van Arsdal case really is governing, which talks about limitations on cross-examination where it's repetitive or marginally relevant. And for someone who had given 14 consecutive answers of I don't recall and I don't wish to be here, I don't want to incriminate myself, another question and answer saying I don't recall would have been of very little value. So really on the first issue, there's a basis on which to reverse the district court's decision. But I also want to talk about harmlessness because I think on the second issue that the district court also misapplied the AEDPA standards. And the reason I say that is the linchpin, in my view, of the Michigan Supreme Court's analysis talked about how the two witnesses, the former testimony, had coincided with the testimony of what would be the untainted evidence if there had been error. The untainted evidence comes from the accomplished Charles Lamp, from the victim's girlfriend Rebecca Mock, and from the victim's girlfriend's sister Roxanne Barr. If you look at the evidence, there were essentially five independent pieces of evidence provided. And the power of the case wasn't in any single person's credibility but in the interlocking nature of the evidence. And in that circumstance, the impeachment value or the value of undermining someone's credibility is blunted where the strength of the case comes in the interlocking nature of the evidence. What do you mean by interlocking natures? Well, here's my point. When you think about the alignment of witnesses, you have two accomplices. You could see them coordinating their testimony. But then you have the defendant's girlfriend, the mother of his four children, who is not aligned with the two accomplices really. And then you have the victim's girlfriend and her sister, who are not aligned with the other two. I mean, you have really these three different sources of information. So Rebecca Mock... Do you just mean consistent nature of their testimony? Consistent, but also what I mean by being independent is that in order for them all to have been lying, they would have had to have coordinated their testimony. So we think about Rebecca Mock's explanation of what happened. She says Blackston and the accomplice Lamp had come to the house, picked up the victim. The next morning she goes to Blackston's house. Blackston is there with Simpson. Miller is not there. Blackston says Miller left. The victim had left the night before. And then Mock also talks about Blackston's confession. I mean, those are all kind of a narrative. And then you look how that intertwines or interconnects with the other testimony. Darlene Rhodes in her former testimony says that Miller came over that night. And the next morning when Simpson and Blackston returned, Simpson says to Blackston, it was just like the movies. You almost blew his head entirely off. That fits exactly, really, with the narrative that was provided by Miss Mock. And then her sister confirms in broad outline the nature of events from that night and also the confession. And that also fits exactly with Lamp and Simpson's explanation of the trial. The two accomplices fit together with the victim's girlfriend that fits together with the defendant's girlfriend, the mother of his four children. So in order for this impeachment evidence to really have been valuable, it would have had to show how these witnesses coordinated their testimony. But there was nothing like that in this impeachment. Would it have had to show that? Or would it just have to have called into question some skepticism, I guess, about the overall picture? And so along those same lines, how would the evidence have been affected without the testimony of Simpson and Centello? Well, the Michigan Supreme Court said – actually, the second question first. The Michigan Supreme Court said that the evidence, the untainted evidence, assuming that there was error, was substantial. And I think that's right. We have two confession witnesses and an eyewitness. Now, the eyewitness does, of course, have motive to lie because he received a manslaughter plea. But there was very strong evidence separate from the untainted evidence. I think by that fact alone, it's very difficult to say that the Michigan Supreme Court's analysis on the harmless error standard is objectively unreasonable. But then tying into the second point, which is really the point I'm making about the limited value of the impeachment, impeachment evidence touches on credibility. But the strength of this case, as indicated by the Michigan Supreme Court in part, is that the evidence coincided, which doesn't depend on the credibility of any of the individual witnesses. So the impeachment would be less important. I see I'm out of time. All right. You'll have your rebuttal. We'll hear from Ms. Jolson. Good morning, Your Honors, Counsel. I'm Kim Jolson, and this is my colleague, Alexa Suhari. Together, we represent Mr. Blackson. In its opening brief, the State argued that a trial court's concerns about the trustworthiness of a witness can somehow trump a defendant's constitutional right. Perhaps recognizing the weakness of its argument in its reply brief and here today, the State now argues that a defendant cannot impeach prior recorded testimony because the only way to do so is through, quote, But this court has already rejected the State's argument. In Vasquez v. Jones, which we cited on page 49 of our brief, a witness was unavailable, and as a result, his preliminary hearing testimony was read into the record. Defense counsel then sought to impeach the testimony with the witness's record, but the trial court refused. Applying AEDPA, this court held that not allowing the defendant to impeach the prior recorded testimony violated clearly established federal law. The facts here are remarkably similar. Blackson. Vasquez you're referring to? Yes. We cited it on page 49 of our brief, Your Honor. The citation is 496. Okay. No, I have it. Thank you. And here, the facts are remarkably similar. Blackson, like the defendant in Vasquez, sought to impeach prior recorded testimony, and this court's holding on that issue is unmistakable. The confrontation clause still applies. Footnote 5 of that decision is particularly instructive. This court cited and quoted the Seventh Circuit, writing, when a dead or otherwise unavailable hearsay declarant's testimony is admitted against the defendant, the defendant's confrontation clause rights are violated when the trial court fails to allow him to impeach the unavailable declarant with the declarant's own inconsistent statements. So put simply, and contrary to the state's position, a defendant does not lose his confrontation right simply because the prior recorded testimony is used against him. I don't really understand why this is supposedly a confrontation clause issue. I mean, just conceptually, this seems to me more of a Crane v. Kentucky issue, and I just wonder if it's a misfit for confrontation. I mean, the whole point is these folks are not testifying. Your Honor, the rights are related, and the Supreme Court has said that. Of course, they combine it at some level, but this court has already said that it is a confrontation clause issue, and that was the holding in Vasquez. Even when prior recorded testimony was read into the record and the witness was not on the stand, it was still a confrontation clause violation. So relying on Vasquez, this court has already decided it fits into that box, although not neatly, perhaps. Okay, but I mean, why isn't it true that we've been trumped now by the Supreme Court? I mean, Nevada v. Jackson. This court has, I mean, and for EDPA purposes, this court, meaning the Supreme Court, has never held that the confrontation clause entitles a criminal defendant to introduce extrinsic evidence for impeachment purposes. So two questions. Is this extrinsic evidence, and do you want to introduce it for impeachment purposes? To your first question, Your Honor, the state has taken that one phrase in Nevada. Is it extrinsic evidence? That's what I'm addressing, Your Honor. We have to look at, they take that one phrase out of context. Well, I've read the opinion, and it seems to me like we're being asked to make the same mistake the Ninth Circuit made, but I want to give you a chance, very directly. Yes, Your Honor. So the evidence at issue in Jackson v. Nevada was, there were two pieces of evidence, third-party documents and also third-party testimony. So that's actually what the court was talking about when it was saying extrinsic. Which one, the documents or both, do you think? Both, both, Your Honor. So what was at issue in Jackson were police reports, and then the defense also wanted to impeach the witness through third-party testimony. So it was something not directly related to what the witness herself was saying. So is this extrinsic evidence here? No, Your Honor. And the distinction is that these recantation statements were statements of the witnesses themselves. So the state wants to say that extrinsic is, I don't know, anything that's another piece of paper, but taken to its logical extreme, if the state's definition is correct, then no witness could ever be impeached with any out-of-court statement or even a prior statement in another judicial proceeding. And that's what their definition of extrinsic would include. It would include pretty much anything. And confirming that extrinsic evidence is much narrower in Jackson v. Nevada, the two cases the court cited, one of which is actually a Sixth Circuit case, Jordan v. Worden, and then the other case, which is a First Circuit case, Brown v. Ruane, in both of those cases, what the defendants had to do was to impeach a witness with third-party testimony. So extrinsic evidence is much narrower than what the state is trying to claim. Okay. And Nevada v. Jackson is not a point for other reasons as well. First and foremost— Just before we move off— Yes, Your Honor. You would agree, though, you do want to introduce this for impeachment purposes. For impeachment purposes, yes, not for substantive evidence. I understand. But for impeachment, Your Honor. All right. Thanks. Go ahead. And Nevada v. Jackson is also not on point because there the defendant's right to confrontation was satisfied. This is on page 1991 of the opinion. The defense counsel was given, quote, wide latitude to question the witness about the prior allegations she had made in the past. So for that reason, it's not on point. And it's also not on point because the evidence issue in Jackson is incomparable to the recantation statements here. The question before the court, the question presented, made clear that the impeachment was on a, quote, collateral matter. And the state of Michigan very well knows that. They actually wrote an amicus brief in that case. And they wrote this on the first page of their brief. The question of the state court's ability to forbid distracting and time-intensive battles over collateral matters is a critical one to the amicus states. So here, the recantation statements were in no way collateral. They went to the very heart of the prosecution's case and the very heart of the witness's credibility in this case. They were not collateral. Those are cogent arguments, and I appreciate them. I know you're citing the Vazquez case. Let's set that aside for a moment. What is the United States Supreme Court case that, in your view, is clearly established authority, entitling your client to introduce this kind of recantation evidence to impeach prior testimony? So, Your Honor, I'm going to answer actually with three different cases or three different lines of cases because you need to add them up. In Davis v. Alaska and a number of other cases we cited in our brief on pages 28 through 30, the Supreme Court has made clear that for cross-examination to be effective, a defendant must have the right to impeach or discredit witnesses and explore possible biases, prejudices, or ulterior motives. So the recantation statements go to all of that. Second, Crawford and its progeny have made clear that the confrontation clause is not an area in which the states may make exceptions. Does Crawford apply here? I mean, this trial occurred before Crawford. I'm not sure when the Michigan Supreme Court opinion fell. Four years later, Your Honor. Crawford, yes. Crawford was 04 and then 08. So, yes, it does apply, Your Honor. Crawford what? How does Crawford, how does that show that? It tells us the confrontation clause is not an area where states may make exceptions because they make practical sense, which is what the state's argument boils down to. They would like to say that as a policy consideration these recantation statements. That's very general, though. And Crawford says, you know, if you're going to have a witness give inculpatory testimony, they have to show up, basically. Right. Right? And that's just, that doesn't have much to do with this case. I agree, Your Honor. But I think looking at Crawford, Melendez-Diaz, Bolkoming, all of those cases, we can see that the confrontation clause is not a place where states can experiment and say we would like this exception to the confrontation clause. So the confrontation clause is absolute except for a couple of narrow exceptions. Even if we agree with you and we say that, you know, perhaps these statements should have been admitted, since there was cross-examination when the testimony was originally presented and it was, you know, pretty similar, why isn't it harmless error since they were excluded? Your Honor, the constitutional errors here were not harmless because in applying the standard from BRAC, because they had a substantial and injurious effect in determining the jury's verdict, both because of how important Simpson and Rosenthaler were to the state's case, but also because of how weak the three untainted witnesses' testimonies were. So are you saying that this was substantive evidence? Because you said it had a real bearing on the trial outcome, and for that to be the case, wouldn't it have to have been substantive? Your Honor, so Van Arsdale says the correct inquiry when there's constitutional confrontation clause violation is whether assuming the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. So the correct analysis is to look and say, okay, if these two witnesses, Simpson and Rosenthaler, were effectively undermined, you then take them out of the equation. And if you don't have their testimonies, the state's case is incredibly weak. And today, the state is claiming that perhaps Rosenthaler and Simpson weren't as important, but if you look at the record, it's clear that they were two of the most important witnesses. For example, Simpson was the state's lead-off witness. That's how the state began its case. And he was the only witness who testified that he personally saw Blackson shoot Miller. And the state mentioned Simpson over 20 times during opening argument and more than 10 times during closing argument. And they knew how important his credibility was. Two times during closing argument, the prosecutor said that Simpson's story had been, quote, entirely consistent. The state knew very well that they needed the jury to believe Simpson. And even though another accomplice, Lamp, testified, Simpson's testimony still mattered a great deal. In Arizona v. Fulminante, the Supreme Court made clear how important a co-defendant's testimony is, even when another co-defendant testifies, because it has a bolstering effect. And this Court has applied that principle in the AEDPA context, both in Vasquez and also in Stapleton v. Wolfe, which we cite on page 51 of our brief. Rosenthal was also critically important to the state. She was the most important witness to undermine Blackson's alibi. And given her relationship to the defendant, they have four children together, the jury easily could have found her more credible than other witnesses. And also, the story that she told on the night, about the night of the murder, which Mr. Restucia already raised, that story was graphic and compelling. So it's likely the jury would have been on the edge of its seat. Well, let me ask you this question. In determining harmlessness, shouldn't we take account of what Mr. Restucia, I think with some person, I think with some justification, describes as the contrived nature of these recantations, and certainly the contrived... I mean, one could say that this inability to testify was highly contrived. I mean, Zatello, if I'm getting the name right, I mean, she had written this affidavit 77 days before, and now she can't remember anything? And, I mean, the trial court's got to put up with this? Doesn't the contrivedness undercut the harmlessness because the jury would see it for what it is, perhaps, arguably? Sorry for the rambling question. So, Rhoades and Teller was on the stand. Right. She couldn't remember anything. The jury did see her not remember. And what you just said, the prosecutor could have made that argument in his closing. But wouldn't it undermine the force of her recantation for purposes of a harmlessness determination? Undermine? So, I think that there's a chance that the jury already didn't know what to make of Ms. Rhoades and Teller. But the parts of the recantation that are so powerful are where she says the reasons why she testified against Blackston. So, the jury had the right to hear that and make it up its own mind. I mean, there's a chance they wouldn't have believed her on that point. But there's also a very high probability that they would have just said, she's a liar. Simpson's a liar. And that's why you just take them out of the equation. Because without the recantation statements, there's a constitutional violation, and then only three-week witnesses remain. I see my time has expired. Any further questions, Judge Daughtry or Judge Donnell? None for me. No, thank you. All right. Thanks a lot. Thank you. I'd certainly like to hear your response, Mr. Rasuccia, to whether this is extrinsic evidence. I think that that's the most critical error of Mr. Blackston's position. Blackletter law, Weinstein, here's a quote from Weinstein's federal evidence. Evidence is extrinsic if offered through documents or other witnesses rather than through cross-examination of the witness himself or herself. It's unambiguous here that the only way the former testimony could have been impeached was through extrinsic evidence. And, in fact, the testimony of the… Because it was a document? Because it was going to be a third-party witness. It was not going to be cross-examination. Cross-examination had occurred at the former trial. Excuse me. The third-party witness part of it was simply that somebody would have to read that inconsistent statement into the record. Is that not correct? That's right. It would have to be a notary. It would not be the witnesses subject to cross-examination, which is the only guidance we have on a comparable case is from Maddox. Maddox had the same posture as this case, where you had someone's former testimony read in. There was no Confrontation Clause violation. There was allegations that this person, his own statements that he had recanted. And the United States Supreme Court said as an evidentiary matter they weren't going to allow those third-party witnesses to testify to try to undermine that person's prior testimony. Well, they said that as an evidentiary matter. I think what we're dealing with here is whether or not this is a constitutional error.  The Confrontation Clause has really taken on some additional stature. This isn't just a question of hearsay evidence or collateral evidence. This is whether there was an inconsistent statement that undermines the testimony. That's right. The comparable unfairness from, because you're right on Maddox being an evidentiary matter, but that's perfectly consistent with the Jackson decision, which says the Confrontation Clause has never required the introduction of extrinsic evidence. There's no question that this is extrinsic evidence. Now, I understand your point that it's... Excuse me, but that depends on us deciding that this is extrinsic evidence. Yes, I think that's true. I think you're right. That is a threshold question, but I think it's unambiguous that it's extrinsic evidence. I think the harder question is whether the Confrontation Clause should consider, when you're providing former testimony, to allow other impeachment evidence that would have been available if that person had testified live. Extrinsic evidence is either a document or testimony of a third party. Right. You're saying here it's extrinsic because it's testimony of a third party in the form of a notary reading the testimony of the witnesses, the first party. Of the statements, of their statements. I mean, that's not the most compelling demonstration of extrinsic evidence I've ever come across. Well, the whole point of cross-examination is to then allow the prosecutor also the opportunity to ask those witnesses about those statements as well, and that would be lost. Essentially, these statements are coming in without the opportunity for the prosecutor to cross-examine those witnesses about the statements. But let me just make one final point about harmless, before I step down, which is that there was a substantial amount of cross-examination that occurred at the first trial regarding inconsistent statements that those witnesses, both witnesses, had made. Simpson had made three other prior inconsistent statements. Simpson had made two other prior inconsistent statements. So the value of these additional inconsistent statements would have been limited. And so consequently, that factors into the harmless error analysis. All right, there were inconsistent statements. And then the witnesses come along and say none of that was true, which clears up why there were other inconsistent statements. All right, but that would only be for impeachment purposes. And so that's the question. How valuable is this impeachment evidence? Oh, I wouldn't think anybody would take the recantations in as substantive evidence. That's not even on the table, I don't think. Right. My point on the harmless error analysis is that the strength of the witnesses together is not from anyone's individual credibility. It's from the interlocking nature of the evidence. So the fact that they have poor credibility would be of no moment. In fact, the recantations would have been transparent. The jury would have seen it. Let me ask you this about the interconnected argument. You were talking about who was connected to whom, and Simpson and Zantello were not connected, were they? They had no connection. As far as I know, no. That's right. That's my point. Yes, but they each come in independently and recant. Right, because they're not connected to each other, but they're connected to the defendant. One's an accomplice friend, and the other is his girlfriend. That's part of the state's point is that these are witnesses who are manipulating the process. That was the basis for the Michigan Supreme Court's decision, essentially perpetrating a fraud in the court by trying to torpedo their testimony through written statements and then making themselves unavailable. So essentially their statements could come in without the ability of the prosecution to cross-examine, which are exactly the justice considerations that were at play in the United States Supreme Court in its evidentiary decision in Maddox not to allow this kind of provision of evidence which allows opening the doors to perjury, which is exactly what was happening here. Well, they would both be subject to a charge of perjury, would they not? Not here because, of course, they just put their statements in. They would be subject to a state charge of perjury, would they not? They did not provide any testimony. The perjury would then have to rely on an affidavit as opposed to live testimony. All right. I've never seen a charge of perjury based on an affidavit as opposed to someone comes in in court and then lies under oath. But they were under oath when they gave the original testimony. Right, but the point is if they've testified under oath and then these written statements or once an affidavit, once a statement, they come in recanting their prior testimony. If they haven't had to come in under oath and say my prior testimony was false and what I'm saying today is true, that would subject them to the charge of perjury. Whereas if you just have a nine-page statement that says my prior testimony was false and I never get up on the stand, I'm not subject to perjury. That's right, and that's one of the things. If you read this record, it is replete in the record that they were trying to avoid any perjury charges. In fact, the state trial court said Mr. Simpson was trying to have his cake and eat it too by getting his deal, getting his friend acquitted, and not being subject to a perjury charge. Before you run off, just real quick, Jackson was also a case involving recantation testimony. Did we have the same alignment there where the defendant wanted to impeach testimony of a prosecution witness with... They were her statements. That was the claim. The police report, in fact, I should have made that point. It's a friendly question. If it's not extrinsic evidence and I don't see how the police reports that are her statements, that may include her statements, I'm going to be a police officer. I'm going to say I took her statement and what she said was false. That's how extrinsic evidence occurs all the time. It's not an uncommon posture for someone to try to impeach testimony by saying, didn't you say something to the police officer? Typically what will happen is this. The person will testify live and I'll then say, didn't you tell the police X, Y, and Z? And the person can just lie and say, no, I never said that to the police. Then the person will try to come in and bring the police officer. I have a report here. I wish to introduce evidence about what you said to what the prior witness had said to you earlier. Well, that's extrinsic evidence of impeachment. It's the person's own statements. That's how it works for extrinsic evidence. It is a technical matter. It is extrinsic evidence. My point is that there's no Supreme Court case that's examined this fact pattern where you have former testimony trying to be impeached through essentially written letters. The only thing like this is Maddox and it excluded it as an evidentiary matter. All right, thank you. Excuse me, could I ask one last question? Does your case rise or fall on us deciding that this is extrinsic evidence? No, there are two claims. One is the first is the substantive claim and the second is the harmless error. Even on the first claim, my point, the broader point is there's no clearly established Supreme Court precedent which provides guidance to answer these questions. These are novel questions. In the absence of guidance, it's impossible to say the Michigan Supreme Court got it wrong. In fact, the best case, the most similar case is Maddox, and it came out the same way. So you can even disagree with me. As I recall, there is no mention of the confrontation clause in Maddox. Is that correct? No, the Maddox case is the seminal case for satisfying the confrontation clause under former testimony. So the first issue was his former testimony could come in as a matter of satisfying the confrontation clause. That's the case that establishes that precedent. Then there's an evidentiary analysis about excluding the impeachment evidence, and the dissent talks about this in terms of confrontation, but the majority resolves it on evidentiary grounds exclusively. My point to the Court is if you're looking for a comparable case, navigating this, extrinsic evidence, former testimony, it's Maddox and Jackson, and together they say it stays out. Even if you don't agree with me regarding extrinsic evidence, there's no clearly established law, and even if you don't agree on that point, it still is harmless. Okay, but if you're wrong about all that, you lose, right? Just kidding. All right. Thank you for your...